58 CCPA

**Application of John E. LINDBERG, Jr.**
**Patent Appeal No. 8481.**

United States Court of Customs
and Patent Appeals.
May 20, 1971.

Jay M. Cantor, Washington, D. C., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–4 and 9–12, all the claims in appellant's application serial No. 390,259, filed August 11, 1964, for "Nose-Cone Cooling of Space Vehicles." We reverse.

Appellant's invention is a nose-cone structure for missiles, spacecraft and the like, providing efficient heat-dissipation in the nose and thereby lessening the likelihood of damage to the interior of the vehicle due to reentry heat.

Appellant's structure includes an imperforate outer surface and a porous carrier layer adjacent the outer surface. The carrier layer is of a ceramic material, in the pores of which a metallic hydride is mixed. The hydride is chosen from the group of hydrides which dissociate endothermically, i. e., by taking on heat, into hydrogen gas and metal.

Reentry heat is conducted from the outer nose-cone surface to the outermost portion of the carrier layer, where endothermic dissociation of the hydride occurs. Passageways are provided for conducting the free hydrogen gas away from the nose. Subsequently, dissociations in the next-outermost portion of the carrier layer occur, and so forth, thus incrementally using up the hydride, with the dissociation always occurring as far from the interior as possible.

Other features and variations are disclosed, but none of them is recited in the appealed claims or necessary for disposition of this case.

Claim 1 is typical:

1. In a space vehicle, a nose having an imperforate outer surface and incorporating adjacent said surface a heat-dissociable metallic hydride mixed directly with porous ceramic having a melting point higher than the boiling point of the metal of said hydride, said metallic hydride being chosen from the group of metals consisting of lithium, sodium, potassium, rubidium, cesium, francium, calcium, strontium, barium, radium, beryllium, magnesium, scandium, titanium, vanadium, ytterbium, zirconium, niobium, palladium, hafnium, tantalum, the rare earth metals (atomic numbers 57–71), and the actinides (atomic numbers 89–103), said hydride emitting

hydrogen gas by dissociation when heated by atmospheric friction against said nose, and means to convey the emitted gas away from the nose upon dissociation of said hydride.

All claims stand rejected as obvious over Runton.[1] Runton's disclosure pertains to a missile nose-cone and can best be understood by reference to his Figs. 1 and 2:

*Fig. 1.*  *Fig. 2.*

[A4015]

1. Runton et al., U.S. Patent 3,026,366, issued Mar. 27, 1962.

A porous ceramic material 15 forms a chamber 23 enclosing a solid or liquid vaporizable material 24, which "may be titanium hydride, lithium hydride or beryllium hydride," all of which are materials recited in appellant's claims.

In operation, the tip 17 is melted away by reentry heat. Subsequent reentry heat is conducted through the porous layer 15 to the vaporizable material 24. This material vaporizes, or dissociates endothermically, the gas and some liquid (if the material 24 is liquid) being thereby forced out through the pores of the layer 15. Runton states:

> When it is considered that the material 24 has a high heat of vaporization absorbing large amounts of B.t.u.'s when converted from one state into another, without change in temperature, it is seen that the material serves effectively as a heat sink to absorb heat and to prevent thereby excessive heat from reaching the war head 10.

The examiner held the claims obvious in view of Runton. He took the position that the term "mixed directly" recited in the claims does not limit the claims structurally to embedding the hydride in the pores of the ceramic material of the carrier layer. He further held that even if it did mean embedding, "whether the vaporizable material is closely associated with the porous layer [as in Runton] or embedded therein [as in the claims] is a matter of design and would be obvious to one having ordinary skill in the art." In reaching this conclusion the examiner had noted that the results of cooling the outer surface and keeping heat away from the interior were also achieved by Runton's device, and that "no new, unobvious result, function, or concept is obtained which would patentably distinguish over the teachings of Runton."

The board affirmed the examiner's rejection "generally for the reasons he has set forth." The board added the observation that the vaporizable material of Runton would seep to some extent into the pores of the ceramic material prior to vaporization and hence satisfy the claim language "directly mixed."

We cannot agree with the Patent Office that, on the record before us, the claimed invention would have been obvious.

As to the question of whether the recitation "mixed directly" requires embedding, we think it does. We are at a loss to imagine how a hydride and a porous ceramic can be mixed directly without the hydride being embedded in the ceramic. This is especially clear in the light of appellant's specification and drawing.

We next consider the board's view that some of Runton's material 24 would seep into the pores of the ceramic layer during operation. While this might be so, we find it at best a strained reading of appellant's claims and of the reference. Such an interpretation of "mixed directly" is inconsistent with appellant's specification, which requires an arrangement of materials which will permit dissociation to occur first at the outermost portion of the carrier layer and to proceed incrementally inward. Nothing short of intimate admixing could accomplish such a result.

Having found that the recitation "mixed directly" requires an intimate admixing not shown in Runton, we now consider the significance of that difference. We agree with appellant that such mixing keeps the reentry heat farther from the interior of the vehicle than does the chamber of vaporizable material in Runton. Against this, the Patent Office says merely that direct mixing is "a matter of design and would be obvious." In the absence of any reference showing at least the general concept of mixing an endothermically dissociable material in a porous layer for the purposes for which it is done here, we must conclude that the rejection was unsound and the board's affirmance erroneous.

The decision of the board is reversed.

Reversed.